```
                                                        U.S. DISTRICT COURT
                                                        DISTRICT OF VERMONT
                                                              FILED
            UNITED STATES DISTRICT COURT
                     FOR THE                            2011 SEP -7  PM 3: 26
              DISTRICT OF VERMONT
                                                                CLERK
                                                        BY_____
                                                              DEPUTY CLERK
```

ANDREW JAMES CARPENTER,                    )
                                           )
         Plaintiff,                        )
                                           )
v.                                         )    Case No. 5:10-cv-249
                                           )
MICHAEL J. ASTRUE,                         )
Commissioner of the Social Security        )
Administration,                            )
                                           )
         Defendant.                        )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO REVERSE AND REMAND
AND GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO AFFIRM**
(Docs. 5, 11)

This matter comes before the court on the motion by Andrew James Carpenter ("Plaintiff") seeking review of the decision of Defendant, the Commissioner of the Social Security Administration ("Commissioner"). Plaintiff seeks an order reversing the Commissioner's denial of his application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Social Security Income ("SSI"), and a remand of the case for payment of benefits. Defendant asks that the Commissioner's decision be affirmed, pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("SSA"). The parties appeared at oral argument on July 20, 2011.

At issue in this case is whether the Administrative Law Judge ("ALJ") erred in assessing the opinion evidence of Plaintiff's treating and non-treating physicians; in finding that Plaintiff had the residual functional capacity to perform light, unskilled work; and in determining that Plaintiff's thoracic outlet syndrome was not medically determinable.

Plaintiff is represented by Phyllis E. Rubenstein, Esq. The Commissioner is represented by AUSA Michael P. Drescher.

For the reasons set forth below, the Plaintiff's motion is granted in part and denied in part, and the Commissioner's motion is granted in part and denied in part.

I. **Background and Procedural History.**

Plaintiff was born in 1962, and is a high school graduate who has worked as a truck driver, logger, and laborer. He is married and has six children.

In the spring of 2007, Plaintiff applied for SSDI and SSI benefits. He initially alleged an onset date of June 29, 1993 but now acknowledges that "his earliest possible onset date is October 9, 1997" due to his failure to appeal the decisions of his prior applications. (Doc. 5-1 at 2 n.1.) His date last insured was September 30, 1999.

Plaintiff's pending SSDI and SSI applications were denied initially and upon review. Thereafter, Plaintiff, who was represented by counsel, requested a hearing before an Administrative Law Judge ("ALJ") which took place by videoconference on January 22, 2010 before ALJ Thomas Merrill. On February 19, 2010, the ALJ issued a decision, finding that Plaintiff was not disabled. (Administrative Record ["AR"] 12-20.) The Decision Review Board ("DRB") selected the ALJ's decision for review, but did not complete its review within the time allowed by regulation. By letter dated May 25, 2010, the DRB notified Plaintiff that the ALJ's decision was the final decision of the Commissioner. In July 2010, Plaintiff filed a request for judicial review. On February 11, 2011, he moved for summary judgment to reverse the decision of the Commissioner, which the Commissioner opposed. The Commissioner then filed a motion seeking to affirm the Commissioner's decision.

II. **The ALJ's Decision.**

Following the five-step process for determining whether a claimant is disabled under the SSA,[1] the ALJ found that Plaintiff met the insured status requirements of the

---

[1] The five-step analysis is conducted as follows:

> The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If

2

SSA through September 30, 1999. He next found that Plaintiff had not engaged in substantial gainful activity since June 29, 1993, the alleged onset date. At the third step, the ALJ found that Plaintiff "has the following severe impairments: mild degenerative disc disease of L4-5, degenerative disc disease of L5-S1, mild degenerative disc disease of C3-4, C5-6, and C6-7, and left ulnar neuropathy status post ulnar nerve anterior transposition." (AR 12.)

The ALJ also found that the medical record documented Plaintiff's complaints of chronic obstructive pulmonary disease, knee pain, right cubital tunnel syndrome, and memory loss. He found "each of these impairments non-severe because they do not impact [Plaintiff's] ability to sustain full-time employment for vocationally relevant periods of time." (AR 15.)

Finally, the ALJ found that Plaintiff's complaints that he suffered from thoracic outlet syndrome ("TOS") that allegedly causes Plaintiff bilateral shoulder pain, numbness, and renders him unable to reach above his shoulder or effectively use his right hand was not medically determinable. (AR 15.) The ALJ explained that doctors first discussed TOS in January 1994 when Plaintiff complained of numbness in his right hand,

---

the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires him to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts[v. Barnhart]*, 388 F.3d [377,] 383 [2d Cir. 2004], and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue,* 566 F.3d 303, 306 (2d Cir. 2009)[.]

*Zokaitis v. Astrue*, 2010 WL 5140576, at *5-6 (D. Vt. Oct. 28, 2010).

but in January 1996, one of his treating physicians was unsure whether the original diagnosis was correct, and a recent physician's report stated that Plaintiff had regained much of the strength in his right hand.

Turning to step three of the analysis, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix I, specifically Listing 1.04. He further found that Plaintiff had the residual functional capacity ("RFC") to perform light work, involving sitting, standing or walking for six hours in an eight hour day, occasionally pushing and pulling, and frequently using controls with his upper extremities, climbing stairs and balancing, occasionally bending, stooping, kneeling, crouching, and crawling. (AR 16.) In this regard, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 17.) The ALJ recounted Plaintiff's testimony of severe functional limitations due to his physical impairments, including Plaintiff's testimony that he could not reach above his shoulder, pick up a gallon of milk, stand up to cook a meal, or even hold a toothbrush; that he must use a cane to get out of a chair; that he experienced excruciating pain made worse by movement; that he could stand for only ten minutes and walk for 100 feet; and that his right hand was "crippled" since his TOS surgery. (AR 16-17.)

The ALJ found that, in terms of Plaintiff's alleged degenerative disc disease, the medical record as a whole did not match Plaintiff's allegations of pain.[2] With regard to

---

[2] The ALJ pointed to different dates when Plaintiff complained of back pain and found them conflicting. For example, Plaintiff asserted he had suffered back pain for more than twenty years, but in other reports he testified that his back pain stemmed from a 2006 accident when he was working on a car. The ALJ also noted that, in November 2006, Plaintiff reported going bowling and welding a sugar arch and, in December 2006, Plaintiff asserted that he continued to work and lift weight because he had "no other option." (AR 17.) The ALJ further cited an April 2008 MRI that showed marked degenerative disc disease at L5-S1, but only mild bilateral foraminal narrowing without compression of the nerve, and a report by Plaintiff's treating

4

Plaintiff's hand and shoulder problems, the ALJ again observed that the medical record did not match Plaintiff's allegations of pain and severe limitations arising from left ulnar neuropathy, since an August 2008 EMG was consistent with neuropathy but Plaintiff underwent surgery in September 2009, after which he noted improvement and doctors reported good range of motion. The ALJ cited a June 2008 motor examination of Plaintiff that was noteworthy for substantially normal hand strength, indeed, one of Plaintiff's doctors reported that Plaintiff's hand strength was "pretty well preserved with the right grip slightly weaker than the left and the lower extremity strength was normal." (AR 18.) Finally, the ALJ pointed out that the most recent nerve conduction study in August 2009 showed moderate focal lesion of the left ulnar nerve at the elbow, but no neuropathy at the wrist and no left cervical radiculopathy. The ALJ concluded that Plaintiff's RFC "allows for frequent use of his upper extremities, however, frequent use is defined as one-third to two-thirds of an eight-hour workday." (AR 18.)

The ALJ gave "great weight to the opinions of treating physicians C. Jones, M.D. and Richard Babk[e]s, M.D." (AR 18.) Both Dr. Jones and Dr. Babkes stated that Plaintiff could perform light work. The ALJ noted that "State examiner Leslie Abramson, M.D., consistently found that the claimant has a light work capacity, but she opined that [Plaintiff] has limited use of his upper extremities and depth perception." (AR 18.)

The ALJ gave "less weight" to the opinions of Plaintiff's treating physician, Dr. Brian Wood, who "based his finding of disability upon the report of another physician, neurologist Dr. Tha[dani], instead of his own clinical history with the claimant." (AR 18.) He also gave "little weight" to the opinion of treating physician, Dr. David Bourgeois, who opined "that the claimant is severely limited and wheelchair bound,

---

physician, Dr. Brian Wood, that Plaintiff exhibited a full range of motion in all joints. The ALJ observed that Plaintiff functioned well enough in June 2008 to use a ladder, and that, in 2009, two MRIs showed "eccentric degenerative changes at L5-S1" and "normal alignment," with other changes at C3-4, C5-6, and C7-T1. The ALJ contrasted those changes with Plaintiff's activities, where medical records showed that Plaintiff "climb[ed] out of a pool ladder" and "help[ed] his daughter move a broken car out of the driveway." (AR 17.)

5

because nothing in the record indicates that the claimant is unable to ambulate." (AR 18.)

The ALJ next concluded that Plaintiff was unable to perform any past relevant work. He found that Plaintiff was a younger individual (between the ages of 18-49) on the alleged disability date, had at least a high school education, and could communicate in English. Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 19.) He based that conclusion on the testimony of a vocational expert who opined that Plaintiff could perform occupations such as cleaner, small products assembler, or mail clerk. The ALJ found that Plaintiff was not disabled.

### III.   Standard of Review.

In reviewing the Commissioner's decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g). It is the Commissioner that resolves evidentiary conflicts and determines credibility issues, and the court may not substitute its own judgment for the Commissioner's. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Aponte v. Sec'y of HHS*, 728 F.2d 588, 591 (2d Cir. 1984). However, if the "evidence has not been properly evaluated because of an erroneous view of the law . . . the determination of the [Commissioner] will not be upheld." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

IV.     **Analysis and Conclusions of Law.**

Plaintiff raises three primary grounds for reversal and remand. He asserts that the ALJ erred by: (1) giving little weight to the opinions of Plaintiff's treating physicians and giving great weight to non-treating Agency physicians, who he inaccurately identified as treating physicians; (2) finding that Plaintiff could perform light, unskilled work; and (3) concluding that Plaintiff's TOS was not medically determinable.

A.  **Whether the ALJ Erred in Assessing Opinion Evidence.**

Generally, the opinion of a claimant's treating physician as to the nature and severity of an impairment is entitled to considerable deference and is given controlling weight where it is supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The regulations recognize that treating physicians "provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). "Conversely, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). The ALJ must provide "good reasons" before discounting a treating physician's opinion. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

When the treating physician's opinion is not given controlling weight, or when the ALJ must decide the weight to be given non-examining sources, the regulations require the ALJ to assess the following factors: (1) the examining relationship between the claimant and the medical source; (2) the treatment relationship, including its length, nature, and frequency of evaluation; (3) the degree to which the medical source provides evidentiary support for his or her opinion; (4) how consistent the opinion is with the entire record; and (5) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (d)(3)-(d)(6).

An ALJ may also consider the opinion of Agency consultants in making a determination of disability:

> It is well settled that an ALJ is entitled to rely upon the opinions of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); *see also Leach ex. rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, at [*]9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

*Montaque v. Astrue,* 2010 WL 1186515 at *8 (N.D.N.Y. Mar. 23, 2010). The Second Circuit has held that the opinions of non-examining sources can override the treating sources' opinions provided they are supported by evidence in the record. *Schisler v. Sullivan,* 3 F.3d 563, 567 (2d Cir. 1993).

### 1. Alleged Errors in Assessing Plaintiff's Treating Physicians' Opinions.

On October 6, 2008, Dr. Brian Wood, who had been Plaintiff's primary provider from approximately October 2007 through May 2009, stated in a "To Whom It May Concern" letter:

> Mr. Carpenter suffers from degenerative and progressively worsening lower back pain, with corresponding leg weakness and dysfunction. He also suffers from thoracic outlet syndrome which results in pain and dysfunction of his upper extremities as well. His neurologist Dr. Thadani essentially indicates that his condition is definitely worsening which would support a prognosis for complete disability.

(AR 661). On December 14, 2009, Dr. David Bourgeois (a physician in the same medical practice as Dr. Wood), completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)" form, in which he found that Plaintiff experienced extensive limitations that had begun in April 2005. (AR 558-560.) For example, he found that Plaintiff could only carry a maximum of five pounds for two-thirds of an eight-hour day; that Plaintiff could stand and/or walk for a total of less than four hours a day; that he could never climb, balance, stoop, crouch, kneel or crawl, since he was "essentially wheelchair bound"; that he was limited in all physical functions (including

reaching, pushing, handling); that his impairments caused him to be limited by every environmental restriction listed on the form; and that he could be expected to miss more than four work days per month due to his impairments.

The ALJ found as follows:

> I give less weight to the opinion of Brian Wood, M.D., who based his finding of disability upon the report of another physician, neurologist Dr. Tha[dani], instead of his own clinical history with the claimant (Exhibit 28F, p.1). Additionally, I give little weight to the opinion of treating physician David Bourgeois, who opined that the claimant is severely limited and wheelchair bound, because nothing in the record indicates that the claimant is unable to ambulate (Exhibit 24F, pp. 1-2). In fact, both Drs. Jones and Babk[e]s opined that the claimant is able to walk even without the use of a cane (Exhibit 27F and 19F). Therefore, I give the opinion of Dr. Bourgeois little weight.

(AR 18.)

Plaintiff argues that both Dr. Wood's and Dr. Bourgeois's opinions were consistent with the medical evidence of record and should be accorded controlling weight. The Commissioner contends that the ALJ properly evaluated this evidence. The court concludes that the ALJ committed legal error in assessing only some of this evidence.

First, the ALJ properly accorded Dr. Wood's October 2008 opinion letter little weight as it is brief, conclusory, and inadequately supported by clinical findings. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by the clinical findings."). Further, Dr. Wood does not explain how Dr. Thadani's opinion that Plaintiff's condition was worsening led him to conclude that "a prognosis for complete disability" is warranted. The record contains two opinions from Dr. Thadani, dated June 13, 2008 (AR 531-534) and August 26, 2008 (AR 686-687). While Dr. Thadani describes Plaintiff's situation as "rather difficult," given the constellation of Plaintiff's health problems, he does not "support a prognosis for complete disability[.]" (AR 661.)

9

However, having properly accorded Dr. Wood's October 2008 opinion letter little weight, the ALJ thereafter inexplicably ignored the remainder of Dr. Wood's approximately one and a half year history of treating Plaintiff, including extensive referrals to specialists. It is permissible for an ALJ to reject certain findings of a provider while affording "great weight" to others. *See, e.g., Simpson v. Astrue*, 2011 WL 2458105, at *5 (D. Vt. June 16, 2011). An ALJ cannot, however, without further explanation, simply reject all evidence from a treating physician because one component of the treating physician's opinions is unsupported and conclusory. Instead, the ALJ "must weigh all of the evidence and make a disability determination based on the totality of that evidence." *Armstrong v. Comm'r of Soc. Sec.*, 2008 WL 2224943, at *4 (N.D.N.Y. May 27, 2008) (citing 20 C.F.R. § 404.1527(c)(2)). Here, the lack of analysis concerning Dr. Wood's treatment record and opinions beyond the October 6, 2008 letter is problematic as it effectively ignores a significant part of the record which might otherwise be given great weight. *See King v. Barnhart*, 114 F. App'x 968, 974 (10th Cir. 2004) (finding ALJ erred when he failed to articulate what weight, if any, he gave to opinions of treating physicians, stating that court could not presume ALJ applied the correct legal standards in considering those opinions); *Dooknah v. Astrue*, 2011 WL 997196, at *1 (E.D.N.Y. Mar. 21, 2011) (remanding because ALJ "committed legal error by failing to give adequate (or indeed any) weight to the opinion of plaintiff's treating physician. . . with respect to the deteriorating condition of plaintiff's back.").

With regard to the December 2009 medical assessment of Plaintiff performed by Dr. Bourgeois, the ALJ correctly observed that Dr. Bourgeois's opinion that since April 2005 Plaintiff was "essentially wheelchair bound" is inconsistent with other evidence in the record which revealed that Plaintiff could walk with the assistance of a cane (AR 310, 593, 607, 610, 613) and which referenced Plaintiff's ambulatory activities through 2008 and 2009 (helping his daughter whose car was stuck in the driveway, climbing a stepladder, falling off a pool ladder—AR 500, 539, 549). Plaintiff's attempt to discount this discrepancy by pointing out that Dr. Bourgeois did not rule out Plaintiff's ability to walk does not alter this conclusion.

The record before the court with regard to the opinions of Plaintiff's treating physicians is inadequate because the ALJ improperly rejected the entirety of Dr. Brian Wood's opinions without providing "good reasons." On this ground alone, remand may be appropriate. *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (stating that "because the Commissioner failed to provide plaintiff with 'good reasons' for the lack of weight attributed to her treating physicians opinion, remand is necessary."). Here, however, the ALJ's error is exacerbated because he misidentified two other physicians as "treating physicians," accorded their opinions "great weight," and relied upon their incomplete assessments in order to determine Plaintiff's RFC.

### 2. Alleged Errors in Assessing Non-Treating Physicians' Opinions.

The ALJ gave "great weight to the opinions of treating physicians C. Jones, M.D. and Richard Babk[e]s, M.D. (Exhibit 17F and 19F)." (AR 18.) He explained that Dr. Jones opined that Plaintiff could perform light work, could sit for two hour periods and stand and walk for one hour periods, could sit for six hours in an eight-hour day and could stand and walk for four hours each in an eight-hour day. The ALJ also cited Dr. Jones's opinion that Plaintiff could "ambulate effectively without the use of a cane, and that he may never use ladders." (AR 18.) The ALJ noted that Dr. Babkes indicated that Plaintiff could perform light work and could ambulate effectively without use of a cane. The ALJ cited the report of Agency examiner, Dr. Leslie Abramson, who "consistently found" that Plaintiff could perform light work, but had limited use of his upper extremities and limited depth perception. He did not ascribe any particular weight to Dr. Abramson's opinion.

It is undisputed that the ALJ mistakenly identified Drs. Jones and Babkes as Plaintiff's treating physicians, when they were non-treating, non-examining Agency consultants.[3] As a result, although the ALJ gave their opinions "great" rather than

---

[3] The court rejects the Commissioner's invitation to treat this as a "drafting error," finding no basis in the record or in the law for adopting this approach. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (explaining that a reviewing court "may not accept . . . counsel's *post hoc* rationalizations for agency actions.") (internal quotation marks omitted).

11

"controlling" weight, the court cannot be certain that even "great" weight would have been accorded their opinions as non-treating Agency physicians.

In addition, while the ALJ claimed to give Drs. Jones's and Babkes's opinions "great weight," he actually appeared to adopt the RFC opinion of Dr. Abramson, whose opinion he failed to assess at any level of weight.

Compounding these errors is the fact that the Agency physicians' RFC assessments were incomplete. Dr. Jones did not complete the part of the form involving "use of hands"—a significant omission, given Plaintiff's longstanding hand and shoulder problems. Dr. Babkes completed the use of hands section on the form, however, he did so only with regard to Plaintiff's right hand, and only relating to handling and fingering. He left sections of the form blank that sought his opinion on Plaintiff's ability to reach (overhead, all other directions), feel, and push/pull with his right hand and he erroneously stated that Plaintiff was right-handed. Dr. Abramson did not complete the part of the form concerning Plaintiff's manipulative limitations. These incomplete RFC forms are the only evidence upon which the ALJ based his RFC determination. Again, remand is appropriate to correct these deficiencies. *See Irvine v. Sullivan*, 1992 WL 245581, at *4 (E.D.N.Y. Aug. 11, 1992) (finding responses on form used to assess plaintiff's RFC were "woefully incomplete" and concluding that insufficient medical evidence or evaluations existed on which the ALJ could reasonably base his RFC assessment).

Finally, the court finds merit in Plaintiff's observation that Drs. Jones, Babkes, and Abramson could not have considered medical records generated after their respective RFC reviews despite evidence of the progressive degeneration of Plaintiff's back condition. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995) (opining that agency RFC assessment forms could not constitute substantial evidence that claimant was capable of performing full range of light work at the time of the hearing because the opinions in those forms were not based on the full record in the case, showing that claimant's health had substantially deteriorated); *Lavarier v. Astrue*, 2011 WL 2116412, at *18 (N.D. Ill. May 27, 2011) (remanding for further consideration because ALJ did not adequately account for alleged deterioration in claimant's condition). Although this

alone might not provide grounds for remand in the circumstances of this case, in conjunction with the other errors identified in the RFC assessments, remand to supplement the record for this purpose is appropriate.

### B. Whether the ALJ Erred in Finding that Plaintiff Could Perform Light, Unskilled Work.

In light of its decision to remand, the court does not reach Plaintiff's further argument that the ALJ erred in concluding that Plaintiff could perform light work. Cases hold that where "the ALJ's RFC analysis was flawed," the step five analysis should be revisited on remand. *See Kelly v. Astrue*, 2011 WL 817507, at *14 (N.D.N.Y. Jan. 18, 2011); *see also Brownell v. Comm'r of Soc. Sec.*, 2009 WL 5214948, at *5 (N.D.N.Y. Dec. 28, 2009) (concluding that because ALJ improperly assessed the treating physicians' opinions, ALJ must reconsider the remaining portions of the sequential analysis in light of a proper analysis of the evidence); *Edel v. Astrue*, 2009 WL 890667, at *24 (N.D.N.Y. Mar. 30, 2009) ("As the [c]ourt has already recommend remand based on the ALJ's . . . RFC analys[i]s, the ALJ's application of the grid at step five is necessarily flawed, preventing the [c]ourt from appropriately analyzing the RFC determination.").

### C. Whether the ALJ Erred in Finding that TOS was Not Medically Determinable.

Finally, Plaintiff argues that his medical records since 1994 are replete with references to TOS and the 1998 surgery performed to relieve his TOS symptoms. He contends that the ALJ's finding that TOS was not medically determinable was based upon the ALJ misstating the notes of two of his physicians and the ALJ's adoption of Agency physician Dr. C. Jones's inaccurate conclusion that the 1994 TOS diagnosis was "dubious." (AR 484.) The Commissioner responds that even if the ALJ erred in concluding that TOS was not a medically determinable impairment, that determination

constituted harmless error because the ALJ evaluated Plaintiff's testimony concerning his shoulder and hand limitations later in the five-step analysis.[4]

Pursuant to the regulations, disability may be found only if a claimant has a medically determinable impairment. *See* 20 C.F.R. § 404.1505(a). Such an impairment must "result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [plaintiff's] statement of symptoms." 20 C.F.R. § 404.1508. The evidence that may establish a medically determinable impairment must come from "acceptable medical sources" such as licensed physicians. 20 C.F.R. § 404.1513(a). "[S]ymptom-related limitations and restrictions must be considered at [ ] step [two] of the sequential evaluation process, provided that the individual has a medically determinable impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-3p, 1996 WL 374181, at *2 (July 2, 1996). It follows that if an impairment is not medically determinable, it cannot be severe within the meaning of the SSA, and "symptom-related limitations and restrictions allegedly resulting from that impairment cannot be considered at step two of the sequential process." *Huskey v. Astrue*, 2007 WL 2042504, at *7 (D. Kan. July 5, 2007).

In this case, the medical record contains numerous references to Plaintiff's TOS. Whether it remained severe is a question for the Commissioner. For example, in January 1994, Dr. Mark Fillinger, at Dartmouth-Hitchcock Medical Center ("Dartmouth") opined that Plaintiff's symptoms were "most consistent with thoracic outlet syndrome with the specific site of compression being the insertion of the pectoralis minor on the coracoid

---

[4] Even the Commissioner acknowledges, as he must, the difference between finding an impairment not medically determinable, and finding it not severe. Further although the Commissioner correctly points out that the ALJ evaluated Plaintiff's allegations related to the use of his right hand to neuropathy, and "plainly considered his allegations pertaining to his hand problems," (Doc. 11 at 20), it is less clear whether the ALJ considered Plaintiff's neuropathy on the right side as well as the left side, since the ALJ referred twice to "severe limitations due to his *left* ulnar neuropathy" following Plaintiff's ulnar nerve surgery in 2009, and "moderate focal lesion of the *left* ulnar nerve at the elbow" in his decision. (AR 18, emphasis supplied.)

process in his right shoulder." (AR 248.) An April 1994 hospital record shows that Plaintiff was apparently treated for TOS. (AR 247.)

Two years later, in January 1996, Plaintiff presented at Dartmouth with difficulty breathing. Dr. Broderick wrote in an office note that Plaintiff "has a long history of arm pain diagnosed as thoracic outlet syndrome, however I am not sure that the diagnosis is in fact correct." (AR 249.) Six days later, Plaintiff was again seen at Dartmouth, complaining of constant pain in his shoulder. The doctor noted that Plaintiff "has a history of bilateral thoracic outlet." (AR 250.)

In 1998, Dr. Steven Shackford treated Plaintiff for TOS and performed a transaxillary first rib resection, meant to alleviate Plaintiff's TOS symptoms. (AR 255, 257, 263.) In June 2008, neurosurgeon Dr. Hulda B. Magnadottir noted that the TOS surgery caused numbness in his right hand. (AR 539.) In addition, a doctor's note from neurologist, Dr. Vijay Thadani, in June 2008 comments on "residual injury to the lower brachial plexus from [Plaintiff's] thoracic outlet syndrome or from the surgery done to correct the thoracic outlet syndrome," (AR 533), which discussed TOS as a current diagnosis. In an October 2008 letter, Plaintiff's primary care physician, Dr. Brian Wood, wrote that Plaintiff "also suffers from thoracic outlet syndrome which results in pain and dysfunction of his upper extremities as well." (AR 661.)

Despite the TOS diagnosis, the surgery to correct it, and the many other record references to TOS-related symptoms that Plaintiff suffered, the ALJ focused only on Agency physician C. Jones's June 2008 observation that "[t]he diagnosis of thoracic outlet syndrome (1994) was considered dubious," apparently referring to Dr. Broderick's 1996 note (AR 484) and a recent report that Plaintiff "had regained much of the strength in his right hand." (AR 15.)

Drs. Fillinger, Shackford, and Thadani (as well as Dr. Wood) are acceptable medical sources. Their diagnoses and assessments relate to the anatomical/physiological abnormality of TOS and are based upon acceptable clinical and laboratory diagnostic techniques established by medical evidence consisting of signs, symptoms, and laboratory findings. On the facts of this case, it was error for the ALJ to find that

15

Plaintiff's TOS was not medically determinable. Moreover, the court cannot find that this error was harmless because SSR 96-3 provides that symptom-related limitations will only be considered if the impairment to which they are related is medically determinable. Because the ALJ found Plaintiff's TOS not medically determinable, the ALJ did not consider symptoms related to it in his RFC assessment. Remand is necessary for the ALJ to properly evaluate Plaintiff's TOS at step two.

### D. The Extent of Remand.

Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the cause for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (quoting 42 U.S.C. § 405(g)). Plaintiff asks the court to reverse and remand solely for the award of benefits. *See Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) ("If there are gaps in the administrative record or the ALJ has applied an improper standard, the court will remand the case for further development of the record. If, however, the record provides 'persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose,' the court may reverse and remand solely for the calculation and payment of benefits."). Here, the court cannot forego remand for further evidentiary proceedings because such proceedings will not only correct the deficiencies currently in the record, they are essential to determining whether Plaintiff is disabled.

### E. Plaintiff's SSDI Claim.

The Commissioner requests the court to affirm the ALJ's decision with respect to Plaintiff's SSDI claim because Plaintiff cannot demonstrate his eligibility for SSDI within a narrow window ranging from October 1997 through September 1999.

To obtain SSDI, a claimant must demonstrate that his disability commenced during a period in which he was entitled to ensured status. *See* 42 U.S.C. § 423(c), 20 C.F.R. §§ 404.101, 404.130, 404.131. In other words, the onset date of disability must precede the date last insured. *See* SSR 83-20, 1983 WL 31249, at *1 (Nov. 30, 1983) (defining onset date as "the first day an individual is disabled as defined in the Act and the regulations" and explaining methodology for determining onset date).

The Commissioner is correct that the evidence upon which Plaintiff relies does not establish that he was disabled from October 1997 through September 1999. At oral argument, Plaintiff's counsel acknowledged that there was "slim evidence on the record as it stands" concerning Plaintiff's disability within that time frame. She questioned, however, whether other records were available that might make the case for disability, and noted that it was incumbent on the ALJ to explore whether other records existed.

At the hearing before the ALJ, Plaintiff asserted that between 1993 and 1999, his shoulders and hands limited his abilities. (AR 32.) The record contains some reports from 1991-1996 (AR 245-250, 676-679) and a few records from 1997-1999 (AR 680-682, 685), but the bulk of the records date from 2006 to the present.

In considering whether to remand and reopen the evidence,

> the court looks to whether the ALJ complied with his affirmative duty to fully develop the record, which applies even when a claimant is represented at the hearing. To that end, the ALJ must seek additional evidence or clarification when the "report from [the applicant's] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."

*Lugo v. Barnhart*, 2008 WL 515927, at *17 (S.D.N.Y. Feb. 8, 2008) (citations and internal quotation marks omitted). Moreover, "[t]o obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Rivenburg v. Comm'r of Soc. Sec.*, 2010 WL 4362768, at *6 (N.D.N.Y. Oct. 12, 2010) (quoting *Sergenton v. Barnhart,* 470 F.Supp.2d 194, 204 (E.D.N.Y. 2007)).

Here, there was no reason for the ALJ to seek additional evidence because there was no conflict or ambiguity in the medical records from 1997 to 1999. At the July 20, 2011 hearing, Plaintiff could only speculate whether additional records are available, and whether they are material to Plaintiff's alleged disability during the specified time frame. In such circumstances, the court must deny Plaintiff's oral request to reopen the evidence

on remand to develop the record. The court thus affirms the ALJ's decision with respect to Plaintiff's SSDI claim, and restricts its reversal and remand solely to Plaintiff's SSI claim.

## CONCLUSION

For the reasons stated above, the court hereby GRANTS in part and DENIES in part Plaintiff's motion to reverse and remand (Doc. 5), and GRANTS in part and DENIES in part Defendant's motion for an order affirming the decision of the Commissioner (Doc. 11).

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 7th day of September, 2011.

Christina Reiss, Chief Judge
United States District Court